UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK GEORGE and LINDA GEORGE,

                              Plaintiffs,                         **DECISION AND ORDER**

v.
                                                                 08-CV-00424(M)
REISDORF BROS., INC.,

                              Defendant.
_____

        In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction

by a United States Magistrate Judge [24].[1]  Before me are the motions of plaintiffs Patrick and

Linda George ("George") motion for partial summary judgment [44],  and the motion of

defendant Reisdorf Bros., Inc. ("Reisdorf") for summary judgment [46]. For the following

reasons, Reisdorf's motion is granted to the extent of dismissing the Georges' federal claims but

otherwise denied. Because I decline to exercise supplemental jurisdiction over the Georges' state

law claims, the parties' motions with respect those claims are denied, and the claims are

dismissed, without prejudice to renewal in state court.


                                        **BACKGROUND**

        The Georges are the owners of a dairy farm located in North Java, New York,

which they acquired in 1989.  Complaint [1], ¶¶2, 7. Reisdorf is the owner of a fertilizer,

chemical and feed distribution plant on the adjacent parcel that sits to the west and southwest of

plaintiffs' farm.  Id., ¶3. In 1987 Reisdorf purchased a piece of land adjacent to its existing

_____
        [1]        Bracketed references are to the CM/ECF entries.

parcel and immediately west of the Georges' parcel ("1987 Parcel"). Id., ¶8. The parcels are separated by a barbed wire fence, id., ¶9, which is located approximately 20 feet to the west of the eastern border of the 1987 Parcel and extends in a easterly direction around a well that the Georges use to service their home and farm. George affidavit [44-3], ¶5, Ex. C.

In March 2007 Reisdorf applied to the Town of Sheldon Zoning Board of Appeals for a variance allowing it to construct a silo on the 1987 Parcel. Complaint [1], ¶14. According to the Georges, Reisdorf promised them that they would have clean water in exchange for withdrawing their opposition to the variance . Id.

The Georges allege that Tonawanda Creek runs through their property, and that "from approximately 2003 to date, defendant's operations have caused deposits and discharges of fertilizer, feed, petroleum products, waste water, molasses and other pollutants and wastes into Tonawanda Creek and a tributary thereof and onto the surface of the land and into the ground water thereby polluting the ground water, Plaintiff's well and Tonawanda Creek." Id., ¶¶10, 12.

Based upon this conduct, the Georges have asserted claims for violations of the Clean Water Act ("CWA") (first count) and the Resource Conservation and Recovery Act ("RCRA") (second count). In addition, they have asserted various state law claims, including violations of the New York Environmental Conservation Law (first count), nuisance (third count), breach of contract (fourth count), and trespass (fifth count).

Following the close of discovery, these motions ensued. The Georges seek partial summary judgment determining the lawful boundary between parties' parcels [44], and Reisdorf seeks summary judgment dismissing all of the Georges' claims.

# ANALYSIS

## A.    Summary Judgment Standard

The standard to be applied on a motion for summary judgment in this Circuit is well settled.  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

The question before me on this motion is  "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented".  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Id.  If  "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' ", and the motion must be granted.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.      Reisdorf's Motion for Summary Judgment**

**1.      Plaintiffs' CWA Claim**

The Georges allege that "[b]y discharging pollutants into the ground water and Tonawanda Creek, Defendant has violated and continues to violate the CWA, in particular 33 USC §§1311, 1342 and Sections 11-0503, 17-0501 and 17-505 of the New York Environmental Conservation Law." Complaint [1], ¶19.

"The CWA 'formally prohibits the 'discharge of a pollutant' by 'any person' from any 'point source' to navigable waters except when authorized by a permit issued under the National Pollutant Discharge Elimination System ('NPDES')." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 215 (2d Cir. 2009).  "NPDES permits are issued either by the EPA, itself, or by the states in a federally approved permitting system." Waterkeeper Alliance, Inc. v. United States Environmental Protection Agency, 399 F.3d 486, 491 (2d Cir. 2005). A State Pollution Discharge Elimination System ("SPDES") permit issued by the New York State Department of Environmental Conservation ("DEC"), is a federally approved state permit system. *See* Riverkeeper, Inc. v. Mirant Lovett, LLC, __ F.Supp.2d__, 2009 WL 5031341, *3 (S.D.N.Y. 2009).

Citizen suits are permitted under the CWA, which provides that "any citizen may commence a civil action on his own behalf . . .  against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation". 33 U.S.C. §1365(a)(1).

The term "to be in violation" as used in §1365 has been interpreted to require that

"citizen-plaintiffs allege a state of either continuous or intermittent violation-that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 57 (1987). The CWA does not permit suits for "wholly past violations." Id., at 64.

Reisdorf argues that the Georges have failed to establish a triable issue of fact as to whether the waters that run through their property are "waters of the United States" (Reisdorf's Memorandum of Law [46-12], pp. 4-6) , that a pollutant has been discharged by Reisdorf into the waters of the United States, (id., pp. 6-7), and that there has been a continuing violation (id., p. 8). Reisdorf also argues that the Georges lack standing to sue under the CWA because they have not demonstrated an injury in fact. Id., pp. 7-8.[2]

Because standing goes to my subject matter jurisdiction, I will address that argument first.

### a.      Do the Georges Have Standing to Sue under the CWA?

In order to show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury in fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Reisdorf argues that the Georges have not established an injury in fact. Reisdorf's Memorandum of Law [46-12], pp. 7-8.

---

[2]      In response to defendant's motion, plaintiffs request partial summary judgment on their CWA claim. Plaintiffs' memorandum of law [55-1], Point IV. However, this motion, which was made in response to defendant's motion for summary judgment, fails for a variety of reasons, including being untimely under the Case Management Order and not being accompanied by a notice of motion or statement of undisputed facts.

To establish an injury in fact, the Georges rely on their expert reports, Linda George's testimony that they have been unable to use their well for drinking and bathing and unable to eat fish from the Creek, and "the admission implicit in Mr.Reisdorf's promise to ensure that they have water (in context obviously meaning clean water)". Plaintiffs' Memorandum of Law [55-1], p. 4.

"It cannot be forgotten that Congress, in affording the statutory right to sue under the Clean Water Act to any 'person or persons having an interest which is or may be affected' by, *inter alia*, any violation of any state order setting an effluent standard or limitation, *see* 33 U.S.C. § 1365, seemingly intended to confer standing on as broad a range of affected persons as is consistent with the dictates of Article III of the Constitution." Hudson Riverkeeper Fund, Inc. v. Yorktown Heights Sewer District, 949 F.Supp. 210, 212 (S.D.N.Y. 1996). Thus, "a plaintiff may show an aesthetic, recreational, or economic injury." Parker v. Scrap Metal Processors, Inc., 386 F. 3d 993, 1021 n. 4 (11th Cir. 2004) (citing Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 181-83 (2000)).

The Georges' alleged inability to eat the fish caught in Tonawanda Creek as a result of Reisdorf's alleged discharge of pollutants  (Patrick George affidavit [55-3], ¶3; Dadd affidavit [46-3], Ex. G, pp. 110-112)  is sufficient to raise a triable issue of fact as to whether they have standing to maintain this suit. *See* Hudson Riverkeeper Fund, Inc., supra,  949 F.Supp. at 212 ("Mr. Hodes . . . avers that he is a regular trout fisherman in the waters into which the defendants' pollutants are directly discharged and that the fishing has steadily worsened over the period of these discharges. . . . When this is coupled with Dr. Bell's averments that the excess discharges are particularly toxic to trout adequate evidence has been offered to avoid summary

judgment for lack of standing."); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F. 3d 149, 156 (4th Cir. 2000) ("Shealy has plainly demonstrated injury in fact. He has produced evidence of actual or threatened injury to a waterway in which he has a legally protected interest. Shealy is a property owner whose lake lies in the path of Gaston Copper's toxic chemical discharge. He and his family swim and fish in this lake. Shealy testified that he and his family swim less in and eat less fish from the lake because of his fears of pollution from Gaston Copper's permit exceedances. Shealy further claims that the pollution or threat of pollution has diminished the value of his property."); Natural Resources Defense Council v. Southwest Marine, Inc., 236 F. 3d 985, 994 (9th Cir. 2000), cert. denied, 533 U.S. 902 (2001). ("members of the plaintiff organizations, and individual plaintiff . . . , testified that they have derived recreational and aesthetic benefit from their use of the Bay (including areas of the Bay next to Defendant's shipyard), but that their use has been curtailed because of their concerns about pollution, contaminated fish, and the like. Those averments are sufficient to satisfy the 'injury in fact' component of Article III standing.").

> **b.** **Does the Body of Water that Flows Through the Georges' Property Constitute "Waters of the United States"?**

The Georges allege that Tonawanda Creek flows through their property. Complaint [1], ¶10; Patrick George affidavit [55-3], ¶2. Reisdorf, on the other hand, describes the body of water running through plaintiffs' property as a stream, and argues that the Georges "appear to presume that this stream is a tributary of the Tonawanda Creek , but have produced no proof in that regard." Reisdorf's Memorandum of Law [46-12], p. 3.

The term "navigable waters" means "the waters of the United States." 33 U.S.C. §1362(7). In Rapanos v. United States, 547 U.S. 715, 739 (2006) a plurality of the Supreme Court held that "'the waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes.' . . . The phrase does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall."

Whether the body of water flowing through the Georges' property is properly denoted as Tonawanda Creek or a tributary thereof is inconsequential; it is the characteristics of that body of water that are of significance. Patrick George states that "[d]uring [his] lifetime, the Creek has always maintained a continuous and substantial flow. It has never dried up." George affidavit [55-3], ¶5. Even Richard Reisdorf refers to the waters running through plaintiffs' property as a "stream". He also appears to concede that the stream is a continuously present fixed body of water, as opposed to a dry channel in which water occasionally or intermittently flows, noting that the stream "is approximately ten feet . . . in width and, depending on the season, the stream's depth changes from approximately eighteen inches . . . to a minimal trickle type flow". Reisdorf affidavit [46-2], ¶19.

Therefore, I conclude that the Georges have raised a triable issue of fact as to whether the body of water that flows through their property meets the definition of the "waters of the United States".

### c.    Has Reisdorf Discharged a Pollutant into Waters of the United States?

In support of their allegation that Reisdorf has discharged pollutants into Tonawanda Creek, the Georges rely on (1) their expert reports and water testing results, (2) two Orders on Consent/Stipulation executed by defendant and the New York State Department of Environmental Conservation ("DEC") on November 20, 2009 ("Consent Orders"), and (3) Richard Reisdorf's deposition testimony and photographs.

### i.    Expert Reports

The Georges' expert, Thomas Casey, P.E., opines that the potential sources of contaminants in the immediate area of the well include fertilizer wagon storage, truck traffic, application of herbicides, mill septic tank effluent, mill storage tanks, and other activities occurring on defendant's property. Magavern affidavit [55-4], Ex. D, August 12, 2009 report. He also opines that a potential source of the sulfides and decaying organic matter and human wastes found in the well water is "the up gradient feed mill facilities" and that the high nitrate levels are from fertilizer storage, truck parking and septic system effluent from defendant's property. Id.

The only water tests which the Georges rely upon are from the well itself. However, as they conceded at oral argument, the well does not constitute waters of the United States. They also point to Mr. Casey's December 23, 2009 second supplemental report, in which he opines that there are four possibilities for "water that is discharged or falls on the Reisdorf properties", including that "[s]hallow, upper groundwater flow predominately easterly and somewhat north from the Reisdorf properties across George's property to Tonawanda Creek . . . .

This water either enters the groundwater table for a long duration or surfaces at Tonawanda Creek and becomes surface flow." Magavern affidavit [55-4], Ex. D-3.

At oral argument, Reisdorf argued that this report should not be considered, as it is not in evidentiary form. However, by failing to move to strike the report on that basis, Reisdorf has waived that argument. *See* Sellers v. M.C. Floor Crafters, Inc., 842 F. 2d 639, 643 (2d Cir. 1988) ("Rule 56(e) defects normally are waived where the party opposing the summary judgment motion fails to make a motion to strike before the district court"); Lakeview Outlets, Inc. v. Uram, 1997 WL 289221, *3 (N.D.N.Y. 1997)("Defendants are not moving to strike Grant's affidavit, however, and thus they are deemed to have waived this alleged Rule 56(e) defect."). Nevertheless, while Mr. Casey opines that the Reisdorf and Tonawanda Creek are hydrologically related, that does not suffice to support a finding that Reisdorf discharged a pollutant into Tonawanda Creek.

Moreover, as discussed above, a necessary component for establishing the discharge of a pollutant is that it originated from a "point source". *See* 33 U.S.C. §1362(12) ("The term 'discharge of a pollutant' and the term 'discharge of pollutants' each means . . . any addition of any pollutant to navigable waters *from any point source*" (emphasis added)). The term "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel . . . from which pollutants are or may be discharged." 33 U.S.C. §1362(14). "Nonpoint source pollution is, generally, runoff: salt from roads, agricultural chemicals from farmlands, oil from parking lots, and other substances washed by rain, in diffuse patterns, over the land and into navigable waters." United States  v.

Plaza Health Laboratories, Inc., 3 F. 3d 643, 652 (2d Cir. 1993), cert. denied, 512 U.S. 1245 (1994).

Mr. Casey's speculation that waters which fall or are discharged onto Reisdorf's property *may* enter the groundwater and flow through the Georges' property to Tonawanda Creek does not create a triable issue of fact as to whether Reisdorf has discharged pollutants via a point source into Tonawanda Creek. *See* No Spray Coalition, Inc. v. City of New York, 2000 WL 1401458, *3 (S.D.N.Y. 2000), aff'd., 252 F.3d 148 (2d Cir. 2001)("The fact that a pollutant might ultimately end up in navigable waters as it courses through the environment does not make its use a violation of the Clean Water Act.").

The only direct evidence of point source discharges by Reisdorf into Tonawanda Creek appears to be the Consent Orders and Reisdorf's deposition testimony.

### ii.    Consent Orders

The Consent Orders stipulate that Reisdorf is responsible for "[t]he discharge of Ammonium Thiosulfate Solution into Tonawanda Creek by means of a catastrophic tank failure, the same being a violation of Section 17-0501.1 of the State of New York's Environmental Conservation Law"[3] and "[t]he making and use of a point source discharge system that discharged directly into Tonawanda Creek, the same being a violation of Section 17-0505 of the State of New York's Environmental Conservation Law".  Magavern affidavit [55-4], Ex. K.  Each

---

[3]    This appears to be the same discharge that was the subject of Residorf's testimony. Magavern affidavit [55-4], Ex. E-3, p. 43.

Consent Order required defendant to pay a $2,500 penalty and to obtain a SPDES Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity.  Id.

The Consent Orders indicate that each violation occurred on March 25, 2009.  Id. This single discrete occurrence approximately nine months *after* the date of the Georges' complaint could not possibly have been the subject of the complaint - nor have the Georges moved to supplement the complaint to include it as a part of this case. Moreover, any claim arising from the March 25, 2009 discharge is rendered moot by the Consent Orders. "'The purpose of the citizen suit is to stop violations of the Clean Water Act that are not challenged by appropriate state and federal authorities.'" Riverkeeper, Inc., supra, 2009 WL 5031341, *3 (quoting Atlantic States Legal Foundation, Inc. v. Eastman Kodak, 933 F. 2d 124, 127 (2d Cir.1991)). Thus, "citizen suits brought under the CWA must 'be prospective in nature and must supplement, not supplant, state enforcement of the Act.'" Id. (quoting Atlantic States Legal Foundation, Inc., supra).  Therefore, the March 25, 2009 discharge, which is the subject of the Consent Orders, cannot support plaintiffs' CWA claim.


### iii.    Mr. Residorf's Deposition Testimony

The Georges also rely upon Mr. Reisdorf's testimony and the photographs identified at his deposition that: (1) a drain grate in defendant's mill yard runs into Tonawanda Creek, (2) a hose discharges water from defendant's grease pit into the mill yard, (3) there were discharges of oil into Tonawanda Creek from an oil/water separator, (5) there is a pipe discharging to Tonawanda Creek with a bluish sheen on the water, and (6) molasses entered Tonawanda Creek.  Magavern affidavit [55-4], Exs. K, E1-6.  However, none of this evidence

raises a triable issue of fact as to whether Reisdorf discharged a pollutant into waters of the United States.

The fact that Reisdorf has a drain grate in its mill yard that runs into Tonawanda Creek and a hose that discharges water from its grease pit into the mill yard do not, standing alone, establish that Reisdorf has discharged a pollutant into waters of the United States. Mr. Reisdorf conceded at his June 23, 2009 deposition that oil was discharged into Tonawanda Creek from his oil and water separator. Magavern affidavit [55-4], Ex. E-4, pp. 44-45. However, he also testified that this occurred "[t]hree or four years ago, or five" and that there have not been any more recent discharges. Id., p. 45. "The Supreme Court has 'held that citizens lack statutory standing under [the Clean Water Act] to sue for violations that have ceased by the time the complaint is filed'" Building and Construction Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc., 448 F. 3d 138, 151 (2d Cir. 2006) (quoting Friends of the Earth, Incorporated v. Laidlaw Environmental Services, 528 U.S. 167, 175 (2000)).

The continued presence of oil from these past discharges also does not constitute an ongoing violation. *See* Connecticut Coastal Fishermen's Association v. Remington Arms Co., 989 F. 2d 1305, 1312-13 (2d Cir.1993)("The present violation requirement of the Act would be completely undermined if a violation included the mere decomposition of pollutants."); Aiello v. Town of Brookhaven, 136 F. Supp. 2d 81, 120 (E.D.N.Y. 2001) ("the Town should not be held liable under CWA as a past polluter for the ongoing migrating leachate plume"). The Georges having failed to present any evidence that these past discharges are likely to continue, their claim based on prior discharges of oil from Reisdorf's oil and water separator is cannot survive.

-13-

With respect to the Georges' claim that molasses was discharged by Reisdorf into Tonawanda Creek, they rely upon the following exchange:

"Q.  Let me show you Exhibits 9 and 11.  9 shows a little water course which is, my understanding, a small tributary for Tonawanda Creek. And 11 is the same, same water course.
. . .

Q.  Looking at 11, do you see what appears to be an oil slick on the water there?

A.  It's not oil.

Q.  What is it?

A.  I have not idea.  It could be molasses, but it's not oil.

Q.  How do you know it's not oil?

A.  Because that's molasses.

Q.  Okay. And looking at number 10, does that pipe  - -  what is that pipe discharging? Is that molasses?

A.  I don't see a discharge."  Dadd affidavit [46-3], Ex. F, pp. 46-47.

Mr. Reisdorf's testimony speculating about the source of a bluish sheen on the surface of an unidentified tributary of Tonawanda Creek is not sufficient to establish a triable issue of fact as to whether Reisdorf discharged a pollutant into Tonawanda Creek.  Plaintiffs also rely on the following  equally ambiguous exchange at Reisdorf's deposition:

"Q.  Exhibit 15 [an August 2008 photograph], does that show the molasses going into the creek, into the guardrail?

A.  Yes." Magavern affidavit [55-4], Ex. E6, p. 50.

Based upon my review of deposition Exhibit 15, it does not appear to depict Tonawanda Creek or any substance flowing into it.  Rather, it depicts a guardrail along a dirt

roadway with a puddle of a brown liquid located under the guardrail and extending into the roadway.

However, even if Mr. Reisdorf's ambiguous testimony *could* be construed as a concession that Reisdorf discharged molasses into Tonawanda Creek, the Georges nevertheless have failed to raise a triable issue of fact as to whether molasses constitutes a "pollutant" under the CWA. "The term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. §1362(6). "The 'EPA has never advocated the unlimited definition of 'pollutant'' and 'Congress did not intend the term 'pollutant' to be all inclusive,'--nor should the Court 'expansively construe the term 'pollutant,' which Congress has specifically defined.'" Peconic Baykeeper, Inc. v. Suffolk County, 585 F. Supp. 2d 377, 416 (E.D.N.Y. 2008) (quoting National Wildlife Federation v. Gorsuch, 693 F. 2d 156, 168, 173, 179 (D.C.Cir.1982)). "Congress used restrictive phrasing- '[t]he term 'pollutant' means dredged spoil, [etc.]'-rather than the looser phrase 'includes,' used elsewhere in the Act. As a general rule, ' '[a] definition which declares what a term 'means' . . . excludes any meaning that is not stated.'' " National Wildlife Federation, supra, 693 F. 2d at 172 (quoting Colautti v. Franklin, 439 U.S. 379, 392 n.10 (1979)).

Molasses does not readily fall within the categories of identified pollutants in the statute. *See* 33 U.S.C. §1362(6), and the Georges offer no argument, expert report, or case law to raise a triable issue of fact as to whether molasses constitutes a "pollutant" under the CWA.

Because I conclude that the Georges have failed to raise a triable issue of fact as to whether Reisdorf discharged pollutants into waters of the United States, their CWA claim must be dismissed.

### 2. Plaintiffs' RCRA Claim

The Georges further allege that "[b]y depositing solid waste materials onto the surface of their 1987 Parcel, Defendant has violated and continues to violate RCRA, in particular 42 U.S.C. §6945." Complaint [1], ¶20.

"'The RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.'" Incorporated Village of Garden City v. Genesco, Inc., 596 F. Supp. 2d 587, 593 (E.D.N.Y. 2009), reconsideration granted on other grounds, 2009 WL 3081724. The open dumping of waste is governed by 42 U.S.C. §6945(a), which provides that

> "any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited, except in the case of any practice or disposal of solid waste under a timetable or schedule for compliance established under this section. The prohibition contained in the preceding sentence shall be enforceable under section 6972 of this title against persons engaged in the act of open dumping."

The Georges argue that they are pursuing their claim under 42 U.S.C. §6972(a)(1)(A), which permits a civil action against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. §6972(a)(1)(A) requires plaintiffs to establish a continuous violation. See Kara Holding Corp. v. Getty Petroleum Marketing, Inc., 67

F. Supp. 2d 302, 311 (S.D.N.Y. 1999) ("Because the language of section 1365(a)(1) is analogous to that of 42 U.S.C. §6972(a)(1)(A), the logic of <u>Gwaltney</u> applies equally to claims brought under that portion of the RCRA.").

      The alleged violation upon which the Georges rely appears to be the "open dump" provisions of 42 U.S.C. §6945. "The statute defines an 'open dump' by elimination as 'any facility . . . where solid waste is disposed of *which is not* a sanitary landfill which meets the criteria promulgated under section 6944 of this title and which is not a facility for disposal of hazardous waste.' 42 U.S.C. §6903(14)." <u>South Road Associates v. International Business Machines Corp.</u>, 216 F. 3d 251, 255 (2d Cir. 2000) (emphasis in original). "Thus, to prove that [defendant] qualifies as an open dump, [plaintiffs] must show: (1) solid waste, (2) is disposed at [defendant], (3) that [defendant] does not qualify as a landfill under §6944, and (4) that [defendant] does not qualify as a facility for the disposal of hazardous waste." <u>Parker</u>, <u>supra</u>, 386 F. 3d at 1012.

      "The term 'solid waste' means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33" 42 U.S.C. §6903(27). Whereas, "[t]he term 'hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may-- (A) cause, or significantly contribute to an

increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. §6903(5).

Reisdorf argues that plaintiffs have "no evidence that [it] has managed, stored or disposed of solid waste or hazardous waste . . . . Furthermore, [plaintiffs] simply have no evidence whatsoever of any alleged injury which could be connected with any activity on [its] property which is regulated or prohibited by RCRA." Reisdorf's Memorandum of Law [46-12], p.10. In opposition to Reisdorf's motion, the Georges argue that "the testimony of Linda George and Richard Residorf and the photographs presented with Mr. Magavern's Affidavit show open dumping of fertilizer from Defendant's carts and consequent pollution of the ground water and Plaintiffs' well." Plaintiffs' Memorandum of Law [55-1], Point II. However, without citation to specific evidence that the open dumping of fertilizer from Reisdorf' carts is occurring, plaintiffs' broad reliance on the deposition testimony of Ms. George and Mr. Reisdorf and unidentified photographs is not sufficient to sustain their burden of raising a triable issue of fact. *See* Domenech v. City of Philadelphia, 2009 WL 1109316, *6 (E.D.Pa. 2009) ("While we have undertaken a thorough review of the evidentiary record in this matter, . . . it is not the obligation of this Court to scour the record in an effort to affirmatively discover a factual dispute that Plaintiffs have not presented.").

The only specific evidence cited by the Georges that pertains to the discharge of fertilizers on Reisdorf's property are excerpts from the deposition testimony of Linda George. Magavern affidavit [55-4], ¶5, Ex. F. Ms. George testified that defendant stores fertilizer in

containers located near the Georges' well and that she has a picture with "all the tops off the fertilizer storage units in which the rain can just wash them right down onto the ground." Magavern affidavit [55-4], Ex. F., pp. 41-42.   Such speculative assertions about the possibility of rain water causing fertilizer to escape from the top of the storage containers is insufficient to raise a triable issue of fact as to whether defendant has disposed of a solid waste on its property.  *See* Major League Baseball Properties, Inc. v. Salvino, Inc.,  542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are . . . based on speculation.").

When asked if she has ever observed fertilizer being discharged from Reisdorf's fertilizer wagons, Ms. Reisdorf testified: "I have. These wagons themselves come back full of - - not only are they full of fertilizer, they come back dirty and the units themselves have the fertilizer residue all over them." Magavern affidavit [55-4], Ex. F, p. 98.  Although this testimony establishes that the wagons carry fertilizer residue, it fails to establish the disposal of solid waste onto land or water.  *See*  42 U.S.C. §6903(3) ("Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste *into or on any land or water* so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." (emphasis added).  Moreover, this testimony fails to establish a continuous violation by Reisdorf.

Ms George also testified that she believes that fertilizer spread on the ground constitutes the discharge of pollutants. Magavern affidavit [55-4], Ex. F, p. 42.  However, the use of fertilizers for their intended purpose does not mean that they are being "discarded", which is

required for the definition of "solid waste". *See* <u>No Spray Coalition, Inc. v. City of New York</u>, 252 F. 3d 148, 150 (2d Cir. 2001) ("Pesticides are not being 'discarded' when sprayed into the air with the design of effecting their intended purpose: reaching and killing mosquitoes and their larvae.").

The Georges also rely on Reisdorf's alleged discharge of "Roundup" herbicide. Ms. George testified that  she observed Roundup splashing out of Reisdorf's trucks on two occasions.  Magavern affidavit [55-4], Ex. F, p. 14. However, she also testified that she reported these discharges to the DEC , but that "three days later after everything was cleaned up" and the DEC "found nothing".  <u>Id</u>., p 15. Thus, plaintiffs have failed to establish a continuing violation based upon the open dumping of herbicides.

Ms. George also testified that Reisdorf failed to mix the Roundup and clean its carts in its fields as it had agreed to do.  Magavern affidavit [55-4], Ex. F, pp. 15-16. However, this testimony also fails to establish a triable issue of fact as to whether Reisdorf disposed of a solid or hazardous waste.

Because plaintiffs have failed to raise a triable issue of fact as to whether Reisdorf violated RCRA's "open dump" provisions, their RCRA claim must likewise be dismissed.

### 3.	Reisdorf's Request for Costs and Attorneys' Fees

Reisdorf also seeks an award of costs and attorneys' fees pursuant to 42 U.S.C. §6972. Reisdorf's Notice of Motion [46]. 42 U.S.C. §6972(e) authorizes such an award "to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate". Thus, the decision as to whether or not to make such an award in any particular case

is committed to the court's discretion. *See* <u>AM International, Inc. v. Datacard Corp.</u>, 106 F.3d 1342, 1352 (7th Cir. 1997).

Although I have concluded that the Georges' federal claims cannot proceed to trial, I do not believe that their claims were totally baseless, and it appears to me that they litigated these claims in good faith, albeit unsuccessfully. Accordingly, in the exercise of my discretion, I decline to make an award of costs or attorneys' fees to Reisdorf, as I do not believe that it would be appropriate to do so in this case.

## C.     Plaintiffs' State Law Claims

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998). Therefore, having dismissed plaintiffs' federal claims, plaintiffs' arising under state law are likewise dismissed, without prejudice to their renewal in state court. *See* <u>Giordano v. City of New York</u>, 274 F. 3d 740, 754 (2d Cir. 2001) ("we conclude that the state-law claims should be dismissed so that the state courts can, if so called upon, decide for themselves whatever questions of state law this case may present").

## CONCLUSION

For the foregoing reasons, I order (1) that Reisdorf's motion for summary judgment [46] be granted to the extent of dismissing the Georges' CWA and RCRA claims, but otherwise denied; (2) that the Georges' claims arising under state law (including their motion for partial summary judgment as to ownership [44]) be dismissed, without prejudice to renewal in

state court; and (3) that the Clerk of this court enter final judgment in favor of Reisdorf, and take

all other steps necessary to close this case.


 **SO ORDERED.**

DATED:        February 10, 2010


                                                                    /s/ Jeremiah J. McCarthy
                                                                    JEREMIAH J. MCCARTHY
                                                                    United States Magistrate Judge